Nos. 21-2874, 21-3056, 21-3382
_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DERRICK GRANGER, CLIFFORD KING, and ERIC WALKER,

Defendants-Appellants.

Appeal from a Judgment in the United States District Court
for the Southern District of Indiana, Indianapolis Division
District Court Case No. 1:20-cr-00097-JRS-DLP-20
The Honorable James R. Sweeney II, Presiding

**REPLY BRIEF OF DEFENDANT-APPELLANT ERIC WALKER**

**BISKUPIC & JACOBS, S.C.**
Vanessa K. Eisenmann, SBN 1084012
Michelle L. Jacobs, SBN 1021706
1045 West Glen Oaks Lane, Suite 106
Mequon, WI  53092
veisenmann@biskupicjacobs.com
mjacobs@biskupicjacobs.com
Office:  262-241-0033
Fax:  866-700-7640

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii

INTRODUCTION .......................................................................... 1

ARGUMENT ................................................................................ 2

I.     The defendants are entitled to a new trial because Juror 70 admittedly was biased in favor of law-enforcement witnesses. ................................. 2

II.    The defendants are entitled to a new trial because the seizure of 59 pounds of methamphetamine from Granger in California was not part of the charged conspiracy. .......................................................... 7

    A.    The California seizure was insufficiently connected to the charged Indiana conspiracy. ............................................................ 7

    B.    The California seizure was insufficiently connected to the alleged Walker-King conspiracy. ................................................... 8

    C.    The error was not harmless. ......................................... 10

III.    Walker is entitled to a resentencing because the district court failed to properly determine his drug quantity. ................................................ 12

CONCLUSION .............................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Griffin v. Bell*, 694 F.3d 817 (7th Cir. 2012).......................................................... 4

*Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001) ...............passim

*United States v. Allen*, 605 F.3d 461 (7th Cir. 2010) ................................ 2, 3, 5

*United States v. Blitch*, 622 F.3d 658 (7th Cir. 2010) ...................................... 2

*United States v. Dortch*, 5 F.3d 1056 (7th Cir. 1993)........................................ 9

*United States v. Helding*, 948 F.3d 864 (7th Cir. 2020)............................. 1, 12

*United States v. Irvin*, 87 F.3d 860 (7th Cir. 1996)........................................ 12

*United States v. Miller*, 688 F.3d 322 (7th Cir. 2012).................................... 10

*United States v. Ricketts*, 146 F.3d 492 (7th Cir. 1998).................................... 4

*United States v. Robinson*, No. 21-CR-14, 2022 WL 17904534 (S.D. Miss.
    Dec. 23, 2022) ......................................................................................... 14

*United States v. Taylor*, 777 F.3d 434 (7th Cir. 2015) ...................................... 5

*United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991) ........................ 9, 13

**Rules**

Fed. R. Evid. 104 .................................................................................................. 7

## INTRODUCTION

The government fails to justify, legally or factually, the district court's refusal to strike an admittedly biased juror. When Juror 70, a retired police officer, was asked whether he would be more inclined to believe a police officer than a civilian witness, he candidly stated: "Well, if you want an honest answer, <u>yes, sir</u>." Tr. 203-04; App. 21-22. That frank admission of bias, combined with the court's failure to do anything more to "determine whether [Juror 70] could relinquish [his] prior beliefs for purposes of deciding the case," together warrant a new trial. *Thompson v. Altheimer & Gray*, 248 F.3d 621, 626 (7th Cir. 2001).

The government also fails to rebut the defendants' showing that the seizure of 59 pounds of methamphetamine from Granger in California was not part of the charged Indiana conspiracy. In any event, the government cannot show that Walker conspired in any way with Granger, so the evidence—which the prosecutor emphasized during opening and closing— should not have been admitted against Walker.

In the alternative, Walker's case should be remanded for resentencing. Despite the fact that the PSR's recommended drug quantity was disputed, the district court failed to "take care" in attributing over 90,000 kg of converted drug weight to Walker, instead of the 23,000 kg tied to his conspiracy. *See United States v. Helding*, 948 F.3d 864, 870 (7th Cir. 2020).

## ARGUMENT

**I.     The defendants are entitled to a new trial because Juror 70 admittedly was biased in favor of law-enforcement witnesses.**

The government attempts to hide behind the standard of review to justify the district court's perplexing decision not to strike a juror admittedly biased in favor of law-enforcement witnesses.  Gov't Br. 20, 22, 28.[1]  While this Court reviews impartial-jury claims for abuse of discretion, *United States v. Allen*, 605 F.3d 461, 464 (7th Cir. 2010), that discretion is <u>not</u> unfettered, and this Court will reverse if any juror was seated who should have been dismissed for cause.  *United States v. Blitch*, 622 F.3d 658, 664-65 (7th Cir. 2010).

Here, Juror 70's final responses in voir dire were candid admissions that, as a retired police officer, he probably would give more credit to law-enforcement witnesses: "So again, the overarching thing here is I <u>want</u> to be fair and honest; but <u>being</u> completely and utterly honest, it's <u>hard</u> to disassociate myself from what I did for a long, long time."  VD Tr. 203; App. 21 (emphasis added).  He also expressly stated that he would be "probably a little more skeptical" of civilian witnesses.  *Id*.

_____

[1] The government also implies that this case is about credibility and the presumption of innocence.  Gov't Br. 22, 24-26.  It is not.  There is no dispute that Juror 70 gave honest, credible answers to voir-dire questions, including that he would apply the presumption of innocence.  But he also honestly admitted his bias towards law-enforcement witnesses.

And if that were not enough, the following was Juror 70's <u>last</u> statement during voir dire:

> [Walker]:  . . . So is it fair to say you <u>would probably be</u> more inclined to believe a police officer than you would be a civilian witness who you know nothing about?
>
> [Juror 70]:  Well, if you want an honest answer, <u>yes, sir</u>.

*Id.* 203-04; App. 21-22 (emphasis added).

The government argues that, because Juror 70 provided "candid, helpful responses" and "grappled honestly" with his beliefs, he was acceptable.  Gov't Br. 20, 26.  To repeat, the issue has nothing to do with Juror 70's credibility; the defendants agree that he was being entirely honest.  Instead, the issue is whether Juror 70's honest answers provided "final, unequivocal assurances" that he was unbiased and would not determine guilt on the basis of his preconceptions.  *See Allen*, 605 F.3d at 464.  As previously explained, they did not.

The government also argues that Juror 70 only expressed "prior beliefs," as opposed to bias.  Gov't Br. 23-24 (citing *Thompson v. Altheimer & Gray*, 248 F.3d 621, 625 (7th Cir. 2001)).  In *Thompson*, 248 F.3d at 626, however, this Court found that the pertinent question was not whether the juror expressed prior beliefs but whether those beliefs "would somehow impede her in giving due weight to the evidence and following the judge's instructions."  This Court reversed and remanded for a new trial in that case

3

because the record contained "no assurances" that the juror could "suspend[] that belief for the duration of the trial." *Id.* at 627.

Similarly here, Juror 70 never offered "unwavering affirmations" that he could set aside his admitted inclination towards law-enforcement witnesses during the trial. *See id.* Indeed, after initially telling the court that he could keep an open mind, Juror 70 hedged when asked if he could judge each witness solely by their testimony and only agreed that police officers lie "for sake of argument." VD Tr. 172-73; App. 17-18. When Walker followed up on these non-committal answers, Juror 70 candidly admitted that, while he <u>wanted</u> to be fair, <u>he probably would be more skeptical of civilian witnesses, and probably would give more credit to law-enforcement witnesses</u>. *Id.* 202-04; App. 20-22.

These facts distinguish this case from *Griffin v. Bell*, 694 F.3d 817 (7th Cir. 2012), and *United States v. Ricketts*, 146 F.3d 492 (7th Cir. 1998), upon which the government relies. Gov't Br. 23-24. In those cases, when the jurors were asked about their general tendencies, they never expressed an inability to impartially apply the law and, in *Griffin*, even qualified their answers by indicating that they could not rule without hearing the evidence. *See Griffin*, 694 F.3d at 824 (discussing *Ricketts*).

This case is much closer to *Thompson*. After Juror 70 had given multiple "discordant" responses, Gov't Br. 25, defense counsel specifically

4

asked Juror 70 whether, given his prior experiences, he "would probably be more inclined to believe a police officer" witness than a civilian witness; Juror 70 unequivocally answered, "yes." VD Tr. 203-04; App. 21-22. Immediately thereafter, the court overruled the defendants' motion to strike Juror 70 for cause.

At the very least, there can be no dispute that Juror 70 expressed a "material and contestable" belief—namely, that police-officer witnesses are more credible than other witnesses. *See Thompson*, 248 F.3d at 627. As a result, it was "the judge's duty to determine whether the juror is capable of suspending that belief for the duration of the trial." *Id.* (emphasis added). The fact that the court did <u>not</u> "push" Juror 70, and Juror 70 did <u>not</u> give "final, unequivocal assurances" that his belief was "shakable" means that "the verdict cannot stand." *See id.*; *c.f. United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015) (on plain-error review, affirming decision to seat juror where "the judge's follow-up examination cleared up the ambiguity").

The government acknowledges *Thompson* but argues that Juror 70 gave "unequivocal assurances." Gov't Br. 27-28. The record belies this assertion. Again, the sequence of Juror 70's responses is important, as he needed to give "<u>final</u>, unequivocal assurances" to be seated. *C.f. Allen*, 605 F.3d at 465 (no abuse of discretion in seating juror who agreed to suspend judgment until hearing evidence "in her last statement during voir dire").

- To begin, Juror 70 agreed that an officer's testimony is entitled to "greater weight" than other testimony and said that he would give officers "the benefit of the doubt."  VD Tr. 154-55; App. 8-9.

- When the court asked if Juror 70 could "judge each witness by their testimony," he said "yes" and agreed that he could keep an "open mind."  *Id.* 157; App. 11.

- When the court <u>again</u> asked whether Juror 70 could "judge each witness by their testimony," he did not unequivocally say "yes" but again said that he thought that jurors should keep an "open mind."  *Id.* 171-73; App. 16-18.

- When counsel followed up, Juror 70 explained in detail that, while he "want[ed] to be fair and honest" with all witnesses, it would be "hard" for him to do so.  *Id.* 202-03; App. 20-21.

- Ultimately, Juror 70 said that he "probably" would be "a little more skeptical" with civilian witnesses and "more inclined to believe a police officer."  *Id.* 203-04; App. 21-22.

In sum, contrary to the government's argument, the district court erroneously permitted Juror 70 to sit "without obtaining the kind of unequivocal assurances of impartiality that are required to assure an unbiased trier of fact."  *Thompson*, 248 F.3d at 627 (Wood, C.J., concurring). Obviously, Juror 70's bias was no minor conflict, as the vast majority of the

6

government's evidence at trial came from law-enforcement witnesses, and Juror 70 was selected as the jury's foreperson. The defendants should be given a new trial.

## II. The defendants are entitled to a new trial because the seizure of 59 pounds of methamphetamine from Granger in California was not part of the charged conspiracy.

### A. The California seizure was insufficiently connected to the charged Indiana conspiracy.

The government argues that the district court did not err in admitting evidence regarding 59 pounds of methamphetamine seized from Granger in California because that evidence "showed how one of the conspirators obtained meth for the conspiracy during the course of the conspiracy." Gov't Br. 30. This is circular reasoning.

Of course, the California seizure was admissible if it was part of the charged conspiracy. But the question is whether that threshold, conditional fact was true. If the California seizure was insufficiently linked to the charged conspiracy, then the evidence was indisputably inadmissible. *See* Gov't Br. 31 (citing Fed. R. Evid. 104(b)).

The government does not deny that the California seizure occurred months before the vast majority of the alleged conduct in the case, during an unrelated investigation of a man who was not identified as a co-conspirator, and across the country from Indianapolis. Rather, the government attempts to justify the admission of evidence by asserting that "Dowling testified that

King's source traveled to California for drugs, and once lost money doing so." Gov't Br. 30.  This assertion is misleading.

At trial, cooperator Danielle Dowling, who frequently bought drugs from King, testified that King said that "he lost his money" in California.  But there was <u>no</u> evidence that this comment was made during the same timeframe as the seizure or otherwise connected to that incident.  Furthermore, the evidence showed that King had <u>multiple</u> drug sources, not just one.  Tr. 779-80[2]; *c.f.* Gov't Br. 32 (implying that the conspiracy only had one drug source).  Accordingly, Dowling's imprecise testimony was insufficient to connect the 59-pound seizure to the conspiracy.

## B.   The California seizure was insufficiently connected to the alleged Walker-King conspiracy.

Even if the evidence were admissible against some of the defendants, it was not admissible against Walker because Walker and Granger were not part of the same conspiracy.  The government responds to this argument by stating that Walker never moved to sever his case and has not challenged the

---

[2]

Q       During the course of your conversations with Clifford King about the drug business, did he ever identify by name who his meth <u>sources</u> were?
   A       No.
Q       Did he tell you about how his <u>main source</u> got the methamphetamine?
   A       He mentioned that he could fly out to California and get it for less money.

sufficiency of the evidence that he joined a conspiracy. Gov't Br. 33. Both facts are undisputed and wholly irrelevant.

For purposes of this appeal, Walker concedes that his case was properly joined, and that the evidence was sufficient to show that he conspired with King—that is, that Walker joined a smaller conspiracy within the larger, charged conspiracy. *See United States v. Townsend*, 924 F.2d 1385, 1397, 1410 (7th Cir. 1991) ("If there was sufficient evidence to convict the defendants of conspiring to distribute illegal drugs, then their convictions were valid, notwithstanding that the indictment characterized as a single conspiracy what in fact were several."). But that does not mean that evidence of the California seizure was admissible against Walker.

Again, the California seizure only directly involved Granger. The government tried to link the seizure to the charged conspiracy through Dowling's testimony about a vague conversation that she had with King about his "main source" of methamphetamine. Tr. 779-80. But the government does not dispute that Granger and Walker were competing sources of supply for King. *See* Gov't Br. 34. Instead, the government simply posits that "it is possible" for two drug competitors to join the same conspiracy, without citing any evidence that that is what happened here. *C.f. United States v. Dortch*, 5 F.3d 1056, 1066 (7th Cir. 1993) (affirming conviction where "the evidence here shows that while Floyd may have

9

competed with Lester and Chuck, he was also one of their suppliers"). Indeed, the entirety of the evidence that Walker knew Granger was <u>one</u> photo of the two men together.[3]

In sum, the government has not shown that Granger and Walker joined the same conspiracy. Accordingly, the California seizure of drugs from Granger was inadmissible against Walker.

### C.    The error was not harmless.

There can be no doubt that the evidence of the California seizure was highly prejudicial. The government correctly notes that "[t]he test for harmless error is whether, in the mind of the average juror, the prosecution's case would have been <u>significantly less persuasive</u> had the improper evidence been excluded." Gov't Br. 34 (quoting *United States v. Miller*, 688 F.3d 322, 329 (7th Cir. 2012)). In *Miller*, this Court found that the error was harmless because the unchallenged evidence was "overwhelming," the government's reference to the disputed evidence was "fleeting," and the district court "gave an instruction limiting the jury's consideration of the evidence." *Id.* at 330. This case is different.

---

[3] The government says that Walker was also "aware of" Granger because Walker knew that King had other drug sources. Gov't Br. 6, 45 (citing Tr. 1327-28). Again, this is misleading. Nothing in the cited testimony indicates that Walker knew that <u>Granger</u> was one of the other sources.

Here, although Walker has not challenged the sufficiency of the evidence that he conspired with King, the prosecution's case was by no means "overwhelming."  Besides two isolated drug seizures, the evidence against Granger consisted primarily of surveillance, Dowling's testimony regarding one alleged deal in March 2020 where Granger was present with King, and seizures from Granger's residence and iCloud account upon his arrest.

The evidence against Walker was even more circumscribed.  It consisted primarily of telephone conversations between King and Walker, surveillance showing them meeting shortly after those calls, and Dowling's testimony regarding her alleged deals with King on those days—all almost exclusively during the final six weeks of the conspiracy.  The defendants effectively cross-examined the cooperating witnesses and persuasively argued that the evidence only showed a network of buyer-seller agreements.

Nor did the government give only "fleeting" mention to the California seizure.  In fact, the prosecutor began his opening statement by telling the jury that, "[o]n November 17th of 2019, DEA agents seized approximately 59 pounds of methamphetamine from Derrick Granger in Los Angeles, California," which, "[i]f you look at it at retail figures, what it sells for on the street to end users, it was about $2 million."  Tr. 47.  In closing, the government again emphasized the importance of the California seizure. *Id.* 1705-07.  The prosecutor also told the jury that the drug-quantity finding

would be "easy" because there was "[f]ifty-nine pounds in Mr. Granger's possession in one shot." *Id.* 1719-20.

In sum, the government's case would have been significantly less persuasive without the evidence of a huge seizure of methamphetamine from Granger. Accordingly, if this Court finds that the evidence was inadmissible (as to all of the defendants or as to Walker), then a new trial is warranted. *See United States v. Irvin*, 87 F.3d 860, 866 (7th Cir. 1996) (remanding for new trial where evidence was "far from overwhelming" and prosecutor emphasized improperly admitted evidence during trial and closing).

## III. Walker is entitled to a resentencing because the district court failed to properly determine his drug quantity.

The government does not dispute that "where a district court relies on evidence that substantially increases drug quantity, it must take care in determining the accuracy of that evidence." *United States v. Helding*, 948 F.3d 864, 870 (7th Cir. 2020). Here, although Walker thoroughly objected to the PSR's drug-weight calculation prior to sentencing, and drug quantity was <u>the</u> driver of the Guidelines range, the district court simply held that, "based on Ms. Dowling's testimony that she received between 1 and 5 pounds of methamphetamine from Mr. King per day and all the other evidence educed

at trial," the PSR's drug-quantity calculation was correct.  Sent. Tr. 14;

App. 52.[4]

The government argues that the PSR's recommendation, which the

district court adopted, was accurate because "nothing suggests" that Walker's

involvement was more circumscribed.  Gov't Br. 45.  On the contrary, as

previously explained, the evidence against Walker was confined to the final

six weeks of the alleged conspiracy, and only established that he conspired

with King, not Granger.  Thus, the court impermissibly applied a four-fold

multiplication[5] to Walker's drug quantity, holding him responsible for 24

weeks of conduct, "on the basis of the drug-related activities of defendants

with whom they did not conspire."  *Townsend*, 924 F.2d at 1412.

Indeed, if Walker's drug quantity were limited to the transactions in

which he was involved, as set forth in detail in the PSR, then his base offense

---

[4] The government contends that Walker "declined to make an argument when the court asked him to."  Gov't Br. 46.  In fact, after telling counsel that he had considered all of their filings, the judge stated that he would "entertain any additional arguments."  Sent. Tr. 7. When Walker's counsel began arguing the § 3553(a) factors, the court interrupted him and said he could argue that later.  *Id.* 8.  The court never specifically inquired about the drug quantity.

[5] The drug transactions that allegedly involved Walker and occurred during the time that he was involved yielded a converted drug weight of 23,168.49 kg over six weeks.  The PSR multiplied this amount by four because the larger conspiracy lasted 26 weeks, for a total converted drug weight of 92,673.96 kg.  But as previously explained, the evidence did not support that Walker joined the larger conspiracy.

level would be 34, instead of 38.  *See* PSR ¶ 15.  With a total offense level of 34 and a criminal history category of IV, Walker's Guidelines would be 210-262 months—significantly lower than his 324-405 range at sentencing.

Grasping for straws, the government argues that this Court could affirm the drug amount using a purity-based calculation.  Gov't Br. 45-46.  As the government admits, however, neither the PSR nor the court based its calculation on drug purity.  *Id.* 46.  Accordingly, the case should be remanded at the very least to give Walker an opportunity to persuade the court to join a growing number of districts in rejecting the methamphetamine guidelines because "purity is no longer probative of the defendant's culpability."  *See United States v. Robinson*, No. 21-CR-14, 2022 WL 17904534, at *3 (S.D. Miss. Dec. 23, 2022) (collecting cases).

In sum, considering the difference this issue made in Walker's Guidelines range, the lack of evidence that Walker joined a larger conspiracy, and the fact that the court's handling of the disputed drug-weight calculation was perfunctory, the case should be remanded for resentencing.

## CONCLUSION

For all of the foregoing reasons, the defendants' cases should be reversed and remanded for a new trial.  In the alternative, Walker's case should be remanded for resentencing.

**BISKUPIC & JACOBS, S.C.**

/s/ Vanessa K. Eisenmann
Vanessa K. Eisenmann
Michelle L. Jacobs